IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

FLORIDA DEPARTMENT OF
REVENUE by and on behalf of
CIARA GAIL CORBITT,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

Petitioner,

CASE NO. 1D14-3011

v.

KYLE PATRICK ALLETAG,

Respondent.

_____/

Opinion filed February 9, 2015.

Petition for Writ of Certiorari.

Pamela Jo Bondi, Attorney General, and William H. Branch, Assistant Attorney General, Child Support Enforcement, Tallahassee, for Petitioner.

No appearance for Respondent.

WETHERELL, J.

The Florida Department of Revenue (DOR) petitions for a writ of certiorari to review an order directing the parties to submit to paternity testing in a proceeding to establish Respondent's child support obligation. As we have done in a number of

prior cases involving similar circumstances,[1] we grant the petition and quash the challenged order.

### *Factual and Procedural Background*

DOR filed a petition on behalf of Ciara Gail Corbitt (the mother) for an order requiring Respondent (the father) to pay child support for K.M.A. (the child). The petition alleged that Respondent previously acknowledged that he was the father of the child by executing an affidavit of paternity. The father filed an answer to the petition in which he summarily "disagreed" with the allegations in the petition and requested "DNA testing" because he "must know [K.M.A.] is 100% [his] child."

The petition was referred to a child support hearing officer, Leartice W. Walton. At the hearing on the petition, the father acknowledged that he signed the child's birth certificate, but he asserted that he only did so because he "was the only male present" at hospital when the child was born. The father requested a "DNA report" and, over DOR's objection, the hearing officer treated the father's answer as a "petition to disestablish paternity"[2] and entered a report recommending that

---

[1] See, e.g., Fla. Dep't of Revenue ex rel. McKnight v. Robinson, 58 So. 3d 356 (Fla. 1st DCA 2011); State ex rel. Carnley v. Lynch, 53 So. 3d 1154 (Fla. 1st DCA 2011); State ex rel. Sharif v. Brown, 980 So. 2d 590 (Fla. 1st DCA 2008); State ex rel. Chambers v. Travis, 971 So. 2d 157 (Fla. 1st DCA 2007); Dep't of Revenue ex rel. Gardner v. Long, 937 So. 2d 1235 (Fla. 1st DCA 2006).

[2] There are numerous problems with the hearing officer's decision to treat the father's answer as a petition to disestablish paternity. First, this court has explained that a request for DNA testing in a DOR-initiated child support proceeding is properly viewed as a discovery request. See Travis, 971 So. 2d at 161-62. Second, the answer could not have been a petition to disestablish paternity because the

paternity testing be ordered. The report did not include any factual findings; it merely stated that "[t]here is a factual basis for the entry of the proposed order" that was submitted by the hearing officer with her report.

The trial court entered the proposed "Order Granting Paternity Test" submitted by the hearing officer. The order directs the mother, the father, and the child to "appear at a laboratory convenient to the parties . . . for the purpose of taking from them a blood or tissue sample or buccal swab for paternity testing." DOR timely appealed the order to this court, but because the order was not a final order or a non-final order appealable under Florida Rule of Appellate Procedure 9.130, we treated the notice of appeal filed by DOR as having invoked our certiorari jurisdiction. See Fla. R. App. P. 9.040(c) ("If a party seeks an improper remedy the cause shall be treated as if the proper remedy had been sought . . . .").

*Analysis*

"To be entitled to certiorari relief, the petitioner must demonstrate [1] that the order under review departs from the essential requirements of the law and [2] that the order will cause irreparable harm that cannot be remedied via plenary appeal." Lynch, 53 So. 3d at 1156. We have repeatedly held that an order

---

applicable statute requires such a petition to be accompanied by scientific test results showing that the petitioner is not the child's biological father. See § 742.18(1)(b), Fla. Stat. (2014). Third, the hearing officer does not even have the authority to consider such a petition. See Fla. Fam. L. R. P. 12.491(e) ("A support enforcement hearing officer does not have the authority to hear contested paternity cases.").

3

erroneously requiring paternity testing constitutes irreparable harm. Id. at 1155 n.1 (citing cases). Accordingly, DOR's entitlement to relief in this case turns on whether the trial court's order departs from the essential requirements of law.

An order departs from the essential requirements of law when it violates a clearly established principle of law (including controlling case law) resulting in a miscarriage of justice. Id. at 1156. Here, the challenged order violates controlling case law holding that "no party to any family law proceeding is entitled to an order requiring another party to submit to genetic testing unless (1) the proceedings place paternity 'in controversy' and (2) 'good cause' exists for the testing," id. at 1156-57 (quoting Travis, 971 So. 2d at 162), because the record establishes that the father did not place the child's paternity in controversy or establish good cause for paternity testing.

The issue of paternity was not placed in controversy by the father because he did not assert in his answer or his testimony at the hearing that he was not the child's biological father; indeed, he admitted at the hearing that he signed the child's birth certificate as the child's father. See Lynch, 53 So. 3d at 1157 (explaining that paternity can be placed in controversy if the purported father "files documentation alleging that he is not the biological father or by asserting that he has not acknowledged his fatherhood in an affidavit"). The ground asserted by the father to support his request for paternity testing – to be 100% sure that he is the child's biological father – was insufficient as a matter of law to place paternity in

4

controversy. See Brown, 980 So. 2d at 591-92 (finding that the father's "preference" for a DNA test "[t]o be really sure" that he was the father did not place paternity in controversy).

Moreover, even if paternity had been placed in controversy, the father did not establish good cause for paternity testing. To establish good cause, the father must allege (and ultimately prove) that he signed the paternity affidavit on the birth certificate due to fraud, duress, or a material mistake of fact, § 742.10(4), Fla. Stat. (2014), or that there is newly discovered evidence of the paternity of the child, § 742.18(1). See Travis, 971 So. 2d at 162 ("Absent any allegation or proof of fraud, duress, material mistake of fact, or newly discovered evidence, no good cause was shown to justify the hearing officer's recommendation to require the mother and child to submit to DNA testing."). The father's assertion that he only signed the paternity affidavit because he "was the only male present" when the child was born and that he wanted to be "100% sure" that he was the child's father is insufficient as a matter of law to establish good cause for paternity testing.

### *Conclusion*

For the reasons stated above, we grant DOR's petition for a writ of certiorari and quash the trial court's order requiring the parties to submit to paternity testing.

PETITION GRANTED; ORDER QUASHED.

BENTON and SWANSON, JJ., CONCUR.

5