WALLACE, Judge,
Concurring in part and dissenting in part.
I concur in part and dissent in part. I agree with the conclusión reached in section IIA of the majority opinion. However, if we were writing on a clean slate, I would adopt the approach taken by the First District in Hooks. Under an analysis of the facts of this case based on Hooks, the conclusion that M.J.M. failed to act with due diligence and did not satisfy the newly discovered evidence requirement of section 742.18 would be inescapable. Nevertheless, I acknowledge that this court’s decision in P.G. is binding on this panel. The majority properly applies the approach taken by this court in P.G. to the facts of this case to conclude that M.J.M. satisfied the newly discovered evidence requirement of section 742.18.1 also concur in the majority’s conclusion in section II B that the trial court did not err in declining to deny M.J.M.’s petition as untimely filed.
I part company with the majority and dissent from the analysis in section II C of the opinion. As the majority recognizes, M.J.M. had the burden of proving his entitlement to relief on his petition. See Dep’t of Revenue v. Hartsell, 189 So.3d 363, 367 (Fla. 1st DCA 2016); Fla. Dep’t of Revenue ex rel. Corbitt v. Alletag, 156 So.3d 1110, 1113 (Fla. 1st DCA 2015). In order to be entitled to relief on his petition, M.J.M. was required to establish, among other things, that he
is current on all child support payments for the applicable child or that [he] has substantially complied with his child support obligation for the applicable child and that any delinquency in his child support obligation for that child arose from his inability for just cause to pay the delinquent child support when the delinquent child support became due.
§ 742.18(2)(c). The majority properly recognizes that the trial court’s findings of fact are insufficient as a ruling that M.J.M. met this high bar. Nevertheless, the majority disposes of the case by a reversal and remand to give M.J.M. a do-over and to allow the trial court an opportunity to try again. I dissent from this approach because the record is more than sufficient to establish that M.J.M. will never be able to meet the requirements of the statute so *1159 as to be entitled to relief. Moreover, the majority’s remedy is inconsistent with this court’s policy of disallowing claimants who fail to prove their cases another bite at the apple so that they may attempt to fill in the gaps in the evidence at a subsequent hearing. See Airsman v. Airsman, 179 So.3d 342, 345 (Fla. 2d DCA 2015); Correa v. U.S. Bank Nat’l Ass’n, 118 So.3d 952, 956 (Fla. 2d DCA 2013) (“[Ajppellate courts do not generally provide' parties with an opportunity to retry their case upon a failure of proof.” (alteration in original) (quoting Morton’s of Chi., Inc. v. Lira, 48 So.3d 76, 80 (Fla. 1st DCA 2010))).
DOR filed its Complaint to Determine Paternity and Support on May 3, 2005. M.J.M. was served with process, and the return of service of process was filed with the trial court on May 24, 2005. After M.J.M. failed to respond to the complaint within the allotted time, the clerk entered a default against him on June 9, 2005. The final judgment of paternity and support was entered on August 29, 2005. In the final judgment, the trial court ordered M.J.M. to pay child support in the amount of $58 per week, in addition to $12 per week toward retroactive child support in the amount of $2552 accrued from November 1, 2004, through September 2, 2005.
It does not appear from the record that M.J.M. has ever paid any significant amounts toward his child support obligation. To the extent that M.J.M has paid anything toward his child support obligation, his payments appear to have been limited to payment of the purge amounts necessary to avoid incarceration or to obtain release from incarceration for nonpayment. Indeed, the trial court found that at the time of the hearing held on July 14, 2014, M.J.M. had a child support arrearage of approximately $36,000. The child support arrearage included $2348 owed to another state for public assistance benefits paid to A.M.R. The record shows that the reason underlying M.J.M.’s consistent nonpayment of his obligation was based in substantial part on a conscious choice, not an inability to pay. According to the trial court’s findings, “[M.J.M.] testified that he never paid the ordered child support because he did not believe the child was his but was unable to prove that until the first DNA test was completed.” The course of the proceedings in the trial court available in our record includes at least some of the various proceedings that DOR brought against him for his persistent nonpayment of his court-ordered obligation. Once again, these proceedings establish that M.J.M. simply refused to pay while able to do so.
On March 2, 2006, the trial court issued a Motion for Contempt/Notice of Hearing/Notice to Produce scheduling a hearing for March 15, 2006, at which M.J.M. was required to appear to show cause why he should not be held in contempt for his failure to pay the court-ordered support payments and to produce his financial records. M. J.M. failed to appear for this hearing. On March 20, 2006, the trial court issued an order finding that M.J.M. had the ability to pay support and that his failure to pay was willful. The trial court found that M.J.M. was in contempt of court for his failure to pay child support as previously ordered. On the same day, the trial court issued a writ of bodily attachment for MJ.M.’s arrest.
After the writ was served, M.J.M. appeared in court for a first appearance hearing on June 2, 2006. At that time, he filled out a form stating that he was self-employed in the irrigation business. The trial court issued an order finding that M.J.M. was in arrears on his child support obligation in the amount of $2805.84. The trial court found that M.J.M. had the ability to pay support, that his failure to pay was willful, and adjudged him to be in contempt for his failure to pay his court-ordered support obligation. Noting that *1160 M.J.M. had never made a payment, the trial court sentenced him to an indefinite term in the Polk County Jail not to exceed 179 days. The order provided that M.J.M. could be released from his imprisonment upon payment of a purge amount of $500. The trial court apparently based the purge amount on M.J.M.’s admissions about the liquid assets then available to him. The record does not reflect whether M.J.M. actually paid the purge amount. The trial court also ordered M.J.M. to pay $90 in costs.
On September 11, 2006, the trial court issued another Motion for Contempt/Notice of Hearing/Notice to Produce directed to M.J.M. The trial court scheduled a hearing on the motion for September 26, 2006. M.J.M. was present for this hearing. Once again, the trial court entered an order finding that M.J.M. had the ability to pay his court-ordered child support obligation and that his failure to pay was willful. The trial court adjudged M.J.M. to be in contempt. The trial court ordered that M.J.M. be incarcerated for an indefinite term in the Polk County Jail not to exceed 179 days. On this occasion, the trial court set the purge amount at $75. The record does not reflect whether M.J.M. ever paid the purge amount. Once again, the trial court ordered M. J.M. to pay $90 in costs.
Undaunted by DOR’s efforts at collection and the trial court’s findings of contempt and orders for incarceration pending payment of the purge amounts, M.J.M. continued to refuse to pay his court-ordered child support payments. After 2006, insofar as our record reveals, DOR’s enforcement efforts against M.J.M. ceased until April 2010, when another state’s child support enforcement unit located M.J.M. in another county in Florida and requested assistance in obtaining reimbursement for public assistance payments made to A.M.R. in the other state where she was then residing with the child. As the trial court noted in the order under review, “the [state of A.M.R.’s residence] has the right to be reimbursed for the $2,348.00 advanced on the minor child’s behalf, whether the Petitioner/Mother wants the funds or not.”
Despite his continuing nonpayment of his child support obligations, M.J.M. was able to raise $2500 in March 2011, which he used to retain a lawyer to file his petition to disestablish paternity. One may speculate that renewed collection efforts prompted by the request from the other state and the information its child support enforcement unit provided regarding M.J.M.’s new Florida address gave him the necessary motivation to finally address the issue of his court-ordered support obligations. M.J.M. made his payment to this lawyer more than five and one-half years after the entry of the final judgment determining paternity and support. The lawyer did not file the petition until December 6, 2012, more than seven years after the entry of the final judgment.
The record shows that M.J.M. failed to carry his burden of proving that he had substantially complied with his child support obligation and that any delinquency in his payments arose from his inability to pay the delinquent child support when it became due. More to the point, the record also shows that there is no way that M.J.M. could introduce sufficient proof on a remand to satisfy his burden or that the trial court could make the necessary findings for M.J.M. to be entitled to relief under section 742.18. Every time that M.J.M. was before the trial court for his failure to pay in accordance with the final judgment, the trial court found that he had the ability to pay, his failure to pay was willful, and he was found to be in contempt of court. The available evidence at the hearings also showed that M.J.M. was employed and had assets sufficient to meet *1161 the purge amounts ordered. Moreover, M. J.M. was able to pay his lawyer $2500 to file the petition to disestablish paternity. Finally, M.J.M. has not just missed a few payments. He has paid next to nothing, just the few minimal payments necessary to keep himself out of jail. As the trial court noted, the amount of his arrearage now exceeds $36,000. Undeniably, M.J.M. has not paid his child support obligation and his failure to pay is in substantial part the result of a conscious refusal, not an inability resulting from any just cause. It follows that M.J.M. is not entitled to the disestablishment of his paternity because he has not and cannot meet the requirements of section 742.18(2)(c).
Another aspect of the trial court’s order—not discussed by the majority—is particularly disturbing. A.M.R., the child’s mother, made several communications to the trial court stating that she would not contest MJ.M.’s petition. Whatever A.M.R.’s motivation for disclaiming any interest in collecting the child support payments intended for the benefit of her child, A.M.R. has not suddenly struck it rich and been relieved of the need for financial assistance in raising her child. In her letters addressed to the trial court, A.M.R. stated that she could not afford to travel from her state of residence to Florida for the hearing on the petition. In reaching its decision to grant M.J.M.’s petition, the trial court expressly “note[d] that [A.M.R.] has not contested this action and has expressed a desire not to have any further monies paid to her.” Although the trial court’s account of A.M.R.’s willingness to relinquish her child’s right- to support from M.J.M. is accurate, the trial court’s finding overlooks that A.M.R.’s wishes in this regard are not entitled to any weight at all. A.M.R. has no right to waive her child’s right to child support; the right to receive the child support belongs to the child, not to A.M.R. See Dep’t of Revenue ex rel. Payne v. Ortega, 682 So.2d 589, 590 (Fla. 2d DCA 1996); see also Serio v. Serio, 830 So.2d 278, 280 (Fla. 2d DCA 2002) (“It is well settled that parents may not waive their children’s right to support because that right belongs to the children.” (citing Ortega, 682 So.2d at 590)). The trial court clearly erred in relying on A.M.R.’s wishes to waive her child’s right to receive support from M.J.M. in concluding that M.J.M. was entitled to relief on his petition.
The problem in this case began when A.M.R. erroneously named M.J.M. as the father of her child. Now, no one disputes that M.J.M. is not- the child’s biological father. But M.J.M. compounded the problem when he failed to-respond to the initial summons issued to him in May 2005. Then, all M.J.M. had to do was to respond to the summons, assert a fact that he says he always knew, i.e., that he was not the child’s father, and ask for a" paternity test. MJ.M.’s inexplicable inaction in 2005 led directly to the predicament in which he now finds himself. Moreover, by failing to address this problem for many years, M.J.M. has created a situation that has likely made it impossible for DOR to identify and locate the child’s true biological father and to collect the necessary support for the child from him.
Because of M.J.M’s failure to address this matter when he was initially served and because of his consistent refusal to honor his court-ordered obligations, the child has lived for more than a decade without the benefit of the support payments to which the child—not A.M.R.—is entitled. The majority’s chosen remedy of sending this case back to the trial court for a do-over is not only inconsistent with the settled law of this district -but will only prolong the proceedings unnecessarily and postpone still further the child’s receipt of the support to which the child is entitled. It is long past time to bring these proceed *1162 ings to an end, just as it is long past time for M.J.M, to begin paying his court-ordered child support obligation. For these reasons, I would reverse the trial court’s order and remand for the entry of judgment on MJ.M.’s petition in favor of DOR.